UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MARIA GARCIA,

               Plaintiff,

       - against -

DETECTIVE LAUREANO RIVERA, Shield No. 1477,
LIEUTENANT PHILIP CHAN, P.O. "JANE DOES" 1-2,
and P.O. "JOHN DOES" 1-20,

               Defendants.
----------------------------------------------------------------------X

COMPLAINT AND
JURY TRIAL DEMAND

     Plaintiff, MARIA GARCIA, by her attorney, ALAN D. LEVINE, ESQ., complaining of the defendants herein, respectfully alleges as follows:

## JURISDICTION

    1.    This is a civil action, seeking compensatory damages, punitive damages and attorney's fees.

    2.    This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the fourth, fifth and fourteenth amendments to the Constitution of the United States.

    3.    Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343.

## VENUE

    4.    Venue is properly alleged in the Eastern District of New York in that the acts complained of herein occurred within this District.

## JURY TRIAL DEMAND

    5.    Plaintiff hereby demands a trial by jury of all issues in this action that are so triable.

## PARTIES

6. At all times relevant hereto, plaintiff, MARIA GARCIA, was and is a natural person, and was resident in the County of Kings, City and State of New York.

7. At all times relevant hereto, defendant DETECTIVE LAUREANO RIVERA, Shield No. 1477 (hereinafter "RIVERA") was and is a natural person, employed as a detective by the Police Department of the City of New York.

8. At all times relevant hereto, defendant LIEUTENANT PHILIP CHAN (hereinafter "CHAN") was and is a natural person, employed as a lieutenant by the Police Department of the City of New York.

9. At all times relevant hereto, defendants P.O. "JANE DOES" 1-2 were and are natural persons, employed as a police officers by the Police Department of the City of New York.

10. At all times relevant hereto, defendant P.O. "JOHN DOES" 1-20 were and are natural persons, employed as police officers by the Police Department of the City of New York.

11. The individual defendants are sued in their individual capacities.

## AS AND FOR A CAUSE OF ACTION
### (42 U.S.C. §1983)

12. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "11" hereinabove as if more fully set forth at length herein.

13. On or about December 19, 2014, at approximately 10:30 A.M., plaintiff was lawfully present at her residence, which was located at 316 Rutland Road, Apt. D6, in the County of Kings, City and State of New York.

14.     At the aforementioned time and place, plaintiff's doorbell and telephone rang simultaneously and there was also knocking on her apartment door.

15.     Plaintiff opened the door to her apartment, whereupon defendants RIVERA and JOHN DOES 1-12, dressed in SWAT gear, came into plaintiff's apartment.

16.     One of the defendants asked plaintiff if a person named David Campbell was present.

17.     David is the middle name of plaintiff's estranged husband, Zachary Campbell.

18.     Plaintiff informed the defendant who had inquired that Mr. Campbell had not lived in the apartment for a year.

19.     One of the defendants, described as a Caucasian male, short, and with a white mustache, designated herein as JOHN DOE 1, said to plaintiff, "I know you've been waiting for this moment to happen."

20.     Plaintiff responded that she needed to talk to an attorney and asked the aforementioned defendant if he had a warrant.

21.     The aforementioned defendant stated, "I have a kind of warrant.  I don't have to show it to you."

22.     Plaintiff asked, "Can I make my phone call?"

23.     The aforementioned defendant responded, "We decide when you make your phone call."

24.     The aforementioned defendant then said to plaintiff, "You look pretty calm now, but I've seen how you are on the video."

25.     Plaintiff was handcuffed by the aforementioned defendant and was taken downstairs and out to the street.

26.    In addition to a large number of police officers present in the street, there were also personnel and cameras from television stations present.

27.    Plaintiff was placed into a New York City Police Department SUV and taken to a police precinct located somewhere in the Borough of Brooklyn.

28.    Once inside the precinct, plaintiff was taken into the squad room and placed inside a cage.

29.    After a period of time, plaintiff was removed from the cage and taken to see a large male Caucasian police officer (JOHN DOE 13) and a female officer (JANE DOE 1).

30.    These officers asked plaintiff questions regarding Zachary Campbell.

31.    Plaintiff responded by asking for an attorney and a phone call.  Plaintiff also stated that she did not know where Zachary Campbell was.

32.    At or about this time, plaintiff overheard conversations among the police officers that led her to realize that she was being confused with a female who had been shown on a video of an altercation, in which Zachary Campbell was allegedly involved, that had taken place several days previously on the Brooklyn Bridge.

33.    Plaintiff informed the defendants who were questioning her that she was not the woman shown in the video and that she had not been present on the Brooklyn Bridge at the time of the aforementioned altercation.

34.    Plaintiff was transported to the stationhouse of the Fifth Precinct in Manhattan.

35.    At the Fifth Precinct, defendant JOHN DOE 14 showed plaintiff a video of the aforementioned altercation on the Brooklyn Bridge.

36.    Defendant JOHN DOE 14 told plaintiff that she was the female shown in it.

37.     Plaintiff informed defendant JOHN DOE 14 that she was not the woman in the video.

38.     Upon information and belief, one or more of the defendants had, by this time, illegally examined the contents of plaintiff's cell phone.

39.     Plaintiff was provided access to a computer and was permitted to make two phone calls, one to a friend, and one to her mother, informing them of her arrest.

40.     Plaintiff was placed in a cage in the Fifth Precinct's squad room, in which another female was present.

41.     The aforementioned female, who is designated herein as defendant JANE DOE 2, acted in a friendly manner towards plaintiff, while not identifying herself as a police officer.  Instead, she falsely claimed to be present in the cage because she had been arrested for fighting with her boyfriend.

42.     Plaintiff mentioned to defendant JANE DOE 2 where she was employed.

43.     Defendant JANE DOE 2 conveyed the aforementioned information to other officers who went to plaintiff's place of employment, The Queens Museum, to make inquiries about her.

44.     Plaintiff's mother telephoned the precinct.  Officers told plaintiff that her mother had called and had said that a lawyer would be obtained for her.

45.     After approximately two hours, a male dressed in a suit and tie arrived to speak to plaintiff.

46.     Plaintiff asked him if he was her attorney.

47.     Without responding to her question, the male took her into another room, where he spoke to plaintiff and elicited from her from her both her alibi and the names of some of her friends.

48.     However, when plaintiff asked him what his name was, he responded, "I am the one who is in charge of your life from now on and you are a liar."

49.     Plaintiff now realized that this "JOHN DOE" defendant was a police officer, improperly posing as an attorney representing her interests, and that he had improperly elicited information from her on behalf of the defendants.

50.     Plaintiff was now taken back to the cage in the Fifth Precinct's squad room.

51.     While she was in the cage, defendant RIVERA and officers in his charge repeatedly played the video of the altercation on the Brooklyn Bridge and insisted to plaintiff that she was the woman shown in the video.

52.     During the time plaintiff was imprisoned as hereinabove, several JOHN DOE defendants went to the Queens Museum and questioned plaintiff's co-workers about her.

53.     Plaintiff continued to deny that she was the female depicted in the video.

54.     At approximately 7:30 P.M., the attorney who had in reality been retained to represent plaintiff came upstairs and informed plaintiff that he had been held downstairs in the stationhouse for approximately forty minutes while plaintiff was being interrogated under false pretenses by the defendant posing as her attorney.

55.     Only at this point was plaintiff's arrest processed.

56.     Plaintiff was transported to Manhattan Central Booking and, the following morning, was brought before a Judge of the Criminal Court of the City of New York, County of New York.

57.     On a complaint sworn to by defendant RIVERA, based upon information falsely and maliciously provided to him by defendant CHAN, and also based on

defendant RIVERA's having viewed the video of the aforementioned altercation along with defendant CHAN, defendant RIVERA falsely and maliciously charged plaintiff with obstructing governmental administration in the second degree, an A misdemeanor; and with resisting arrest, an A misdemeanor.

58.     Bail of $1,000.00 was set on plaintiff.

59.     Plaintiff's bail was paid and she was released.

60.     When plaintiff returned to her residence, she found that the JOHN DOE defendants who had raided it had completely trashed it and had also confiscated all of her electronic equipment.

61.     At the time of the events described herein, plaintiff was a graduate student at Rutgers University in New Brunswick, New Jersey.

62.     The confiscation of her computer and all of her other electronics made it impossible for her to do her schoolwork or to work on her Ph.D. dissertation.

63.     Various JOHN DOE and JANE DOE defendants spent the next several weeks questioning plaintiff's friends, colleagues and employers about plaintiff's activities.

64.     During this period, plaintiff was suspended without pay from her part-time job as an event planner at the Queens Museum.  Plaintiff's work at a translation service was also cut back during this period.

65.     Plaintiff was compelled to appear in court on the charges against her on approximately four occasions until, on March 31, 2015, all charges against her were dismissed on the motion of the New York County District Attorney.

66.     Defendants, while acting under color of state law, violated plaintiff's rights, guaranteed to her by the fourth, fifth and fourteenth amendments to the Constitution of

the United States, by arresting and prosecuting her without probable cause, by breaking into her house without having a warrant permitting them to do so, by questioning her after she stated that she wanted an attorney, by having one of the defendants pose as an attorney in order to trick plaintiff into providing information, by destroying her personal property, by illegally searching her cell phone and her computer without having a warrant therefor, by imprisoning her without having probable cause to do so, and by forcing her to defend herself in a maliciously initiated criminal prosecution.

67. As a result of the aforementioned violations of rights guaranteed to her by the fourth, fifth and fourteenth amendments to the Constitution of the United States, plaintiff suffered extreme mental anguish, necessitating psychotherapy; was publicly humiliated; lost her employment and the income therefrom; and lost time from her education.

68. By reason of the aforementioned unconstitutional and illegal actions taken against her by the defendants, plaintiff has been damaged in an amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against the defendants.

WHEREFORE, plaintiff, MARIA GARCIA, demands judgment against defendants, DETECTIVE LAUREANO RIVERA, Shield No. 1477, LIEUTENANT PHILIP CHAN, P.O. "JANE DOES" 1-2 and P.O. "JOHN DOES" 1-20, in an amount sufficient to compensate her for her injuries as enumerated hereinabove and, in addition, seeks punitive damages against the defendants.

In addition, plaintiff demands the costs and disbursements of this action, including her attorney's fees, pursuant to 42 U.S.C. §1988.

Dated:  Kew Gardens, New York
        December 15, 2017

ALAN D. LEVINE, ESQ.
Attorney for Plaintiff
80-02 Kew Gardens Road, Suite 307
Kew Gardens, New York 11415
(718) 793-6363
Our File No:  2414